(No. 36377.

ERNEST BASSI, Trustee, *et al.,* Appellants, *vs.* DONALD LANGLOSS *et al.,* Appellees.

*Opinion filed May 16, 1961.*

PETERSON, JOHNSON & MARTIN, of Princeton, and ALBERT PUCCI, of Hennepin, (WATTS C. JOHNSON, of counsel,) for appellants.

WALTER C. OBERBECK, of Henry, for appellees.

SNYDER, CLARKE, DALZIEL, HOLMQUIST & JOHNSON, of Waukegan, (GERALD C. SNYDER, of counsel,) for *amcius* *curiae,* Illinois County and Probate Judges' Association.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This case presents the question of whether a lawyer may practice law while holding the office of county judge.

An action was commenced by plaintiffs in the circuit court of Marshall County to foreclose a trust deed, which contained the usual provision for attorney's fees. Their attorney was Albert Pucci, county judge of Putnam County. The defendants amended their answer alleging the disqualifi-

cation of plaintiffs' attorney on the ground that his acting as attorney while holding the judicial office was contrary to public policy. The amendment was stricken and a decree of foreclosure was entered: The Appellate Court, Second District, reversed. (28 Ill. App. 2d 97.) We granted leave to appeal to reach the policy question.

The problem of judges practicing law while occupying judicial office has been the concern of the profession for many years. In *Town of Bruce* v. *Dickey*, 116 Ill. 527, it was held that no constitutional prohibition existed but the opinion was critical of the practice in the following language: "Propriety may forbid a Judge of the Supreme or Circuit Court from practicing law, as not being congruous with the judicial office, but we find no prohibition against it." (p. 537.) Again, in *O'Hare* v. *Chicago Madison and Northern Railroad Co.* 139 Ill. 151, objection was made by one of the parties to the county judge of DuPage County, who had on occasion held court in the county court of Cook County, appearing as an attorney in that court. It was held that except when presiding, he could practice in the court, but the opinion went on to say: "The practice is one not to be commended, because of the tendency to bring the administration of the law into disrepute and contempt * * *." (p. 155.) See also: *Evans* v. *Funk*, 151 Ill. 650; *Landon & Lancashire Indemnity Co. of America* v. *Tindall*, 377 Ill. 308.

These earlier cases reveal that the practice of law by judges has always been considered undesirable by this court, but because of conditions then prevailing such as extremely low judicial salaries, the limited area within which lawyers practiced because of the difficulty of travel and the like, it was a practice which could be tolerated. Changed economic conditions and changing concepts of the administration of justice, together with the recent extensive use of interchange judges, demands that this question again be considered.

In 1954, the question of whether a circuit judge may

practice law was squarely presented and fully considered from a policy standpoint in *Schnackenberg v. Towle,* 4 Ill.2d 561. There a circuit judge accepted legal employment and entered into a contract with another attorney. The latter was to carry on the actual litigation, while the judge was to act in an advisory capacity only and share in the fees. The litigation was carried to a successful conclusion by the attorney who refused to pay the judge his proportionate share of the fee. The judge then sued for his fee. This court held that the judge could not recover because of a statutory prohibition against a circuit judge practicing in the court in which he is commissioned or appointed. But the decision went further than relying upon legislative prohibition. It expressed the underlying acknowledgement that such practice was contrary to public policy because the practice tended to bring the administration of justice into suspicion and disrepute. While the holding in *Schnackenberg* is not conclusive here, the policy considerations used with respect to circuit judges are of cogent force in this case.

The only legislative mandate relative to the practice of law by judges is contained in section 10 of the Attorneys and Counselors Act, (Ill. Rev. Stat. 1959, chap. 13, par. 10,) and applies to justices of this court, judges of courts of record and county and probate judges. The section prohibits the practice of law by a judge in the court in which he is commissioned or appointed. It is argued that while this prohibition extends to circuit judges under the *Schnackenberg case* because the circuit court is a unit in the State-wide judicial system of circuit courts, it operates as to a county judge only in his own county. The pith of the argument is that under section 18 of article VI of the constitution, the office of county judge is part of a county rather than a State-wide system. It is pointed out that while interchange of circuit, superior, probate and county judges is authorized, mandatory assignment by the Supreme Court does not apply

to the latter and that county judges interchange only with their consent.

This issue is not confined to the narrow ground of construction of statutes and interpretation of legislative intent, although the tendency of the General Assembly has been against the practice of law by judges. (See *e.g.*, section 10 of the Municipal Court of Chicago Act, Ill. Rev. Stat. 1959, chap. 37, par. 365, which was amended in 1931 to prohibit judges of that court from engaging either directly or indirectly in the practice of law.) In final analysis, the question goes to the inherent power and duty of this court to determine and enunciate policy for the conduct of members of the legal profession. As we noted in the case of *In re Teitelbaum*, 13 Ill.2d 586, historically, the power to regulate the practice of law is the prerogative of this court. While there may be some question of this court's power to deal with a judge whose activities are inconsistent with his judicial obligations, there can be no question of our power to deal with an attorney whose activities present a conflict of interest which would impede the proper administration of justice. This inherent power extends to attorneys who occupy the bench as well as those who are engaged solely in the practice of law.

We are of the opinion that the practice of law by an attorney during his tenure as county judge, in or out of court, directly or indirectly, is incompatible with his judicial responsibilities and duties and contrary to public policy. Candor compels acknowledgment that this statement of public policy is a new ruling and that we should prescribe the application and limits of the principle.

It is a matter of common knowledge that county judges, particularly those in our smaller counties, have long practiced in the courts other than those in which they preside. While the practice has never been favored, it has been condoned because the salaries paid the judges were in many instances so low that it was impossible for them to properly

maintain themselves and their families. (This situation has been partially remedied by salary increases, particularly in the larger counties.)

Undoubtedly, many of the attorneys who successfully sought the office of county judge placed reliance upon tradition and our early holdings. They may even have relied upon language in the more recent *Schnackenberg case* (4 Ill.2d 561) where it was stated, at pages 565 and 566: "Where, however, the remuneration is generally deemed adequate, as is the case with judges of the Supreme Court and the courts of general original jurisdiction, and as may be the case with judges of other courts, inadequate remuneration no longer compels a deviation from propriety, or sanction of, a practice incongruous with the judicial office. When the reason for a rule disappears, the rule itself should disappear." We are of the opinion that such reliance was justified and that they should not be compelled to either immediately cease practicing law or resign their judgeships. To do so would work undue hardship on both the judges and the public. Resignation would bring on the additional expense of special elections, to say nothing of inconvenience to the public in the interim.

When undue hardship will be caused by overruling a decision upon which persons have justifiably relied, we have seen fit to make the new decision operate prospectively. (*In re Fisher,* 15 Ill.2d 139; *In re Luster,* 12 Ill.2d 25; *In re Brotherhood of Railroad Trainmen,* 13 Ill.2d 391. See also 48 I.B.J. 412.) We think it proper to do so here. The standard adopted shall become effective December 3, 1962, the commencement of the terms of office of county judges elected at the next election. This will permit the General Assembly to consider remedial legislation (see *e.g.,* section 18 of article VI of the constitution), and give the affected judges time to make the necessary adjustments to comply with the standard fixed.

Regulation of the bar is usually accomplished by rule

or a separate proceeding, however, when policy questions are raised and determined in actual litigation, we think it proper to go beyond passing upon the case immediately before us. Our opinion will thus serve the further purpose of guidance for the bench and bar. Under this ruling, judgments entered in actions where county judges appear as attorneys will not be subject to attack on that sole ground and disciplinary action against them for that reason will be inappropriate.

The ruling of the Appellate Court that the practice of law by county judges is against public policy is approved, but its judgment must be reversed because it was predicated upon a principle to which we have given prospective application. The judgment of the Appellate Court, Second District, is accordingly reversed, and the cause remanded to consider the remaining issues raised on the appeal.

*Reversed and remanded, with directions.*