People ex rel. Rose Marie Pace, Petitioner-Appellee, v. Eula Wood and Jack Wood, Respondents-Appellants.

Gen. No. 64–F–27.

Fifth District.

June 30, 1964.

Morris B. Chapman and Roy W. Strawn, of Granite City, for appellants.

Burton C. Bernard and Joseph R. Davidson, of Granite City, for appellee.

WRIGHT, JUSTICE.

This is a Petition for a Writ of Habeas Corpus brought in the Circuit Court of Madison County, Illinois, to secure custody of a five-year-old boy, Russell Gene Jacobs. The petitioner, Rose Marie Pace, is the twenty-five-year-old natural mother of the child, who is divorced from the father of the child and has since remarried. The respondent, Eula Wood, is the child's paternal grandmother and respondent, Jack Wood, is her second husband. The father, C. R. Jacobs, is remarried and takes no part in this proceedings.

Although the evidence is conflicting, it would appear that C. R. Jacobs and Rose Marie Pace, the petitioner, were married in St. Louis, Missouri, in September, 1955. C. R. Jacobs was a twenty-year-old member of the Armed Forces on leave and Rose Marie Pace was seventeen years of age. Soon after the marriage, C. R. Jacobs, was called to active duty on the West Coast and Rose Marie stayed behind in St. Louis,

Missouri, with her mother, Rose Richardson. After a period of about six months, Rose Marie joined her husband, C. R. Jacobs, in California where the couple lived until Rose Marie became pregnant with Russell Gene. After she became pregnant, Rose Marie returned to the home of her mother in St. Louis, Missouri. She was joined by her husband, C. R. Jacobs, about one month before the birth of Russell Gene in September of 1957.

After the birth of Russell Gene, the young couple moved to the Granite City, Illinois, area and Rose Marie again became pregnant. Nine months after the birth of Russell Gene, a second son, Dusty Lynn, was born to this couple. Thereafter, the family moved a number of times, had considerable financial and domestic difficulty until C. R. Jacobs and Rose Marie separated in August of 1960. In October of 1960, Rose Marie was granted a divorce and custody of the two boys by the Circuit Court of Madison County, Illinois. A short time after the divorce, Rose Marie and the two boys, Russell Gene and Dusty Lynn, moved back to St. Louis, Missouri, where they resided with the mother of Rose Marie. In January, 1961, C. R. Jacobs and Rose Marie remarried and the family again moved to the Granite City area.

Following the remarriage, the financial and domestic difficulties continued and the family moved several times both in the Granite City, Illinois, area and in the St. Louis, Missouri, area. Finally, in August 1962, while living in St. Louis, Missouri, the final separation occurred and C. R. Jacobs took Russell Gene and returned to the home of respondents in Granite City, Illinois. Rose Marie remained in St. Louis, Missouri, with her mother and Dusty Lynn.

A few months later, Rose Marie filed suit for a divorce and custody of the children in the Circuit Court of St. Louis but did not obtain personal service on

either C. R. Jacobs or Russell Gene Jacobs. A decree was entered in the spring of 1963, granting Rose Marie a divorce and custody of Dusty Lynn. The court did not have jurisdiction of Russell Gene who was residing with respondents in Granite City, Illinois, and therefore did not deal with his custody.

Since the divorce of C. R. Jacobs and Rose Marie, Dusty Lynn Jacobs has remained with his mother in St. Louis, Missouri and in May of 1963, Rose Marie married her present husband, Ben Pace. Since the marriage of Rose Marie and Ben Pace, they have lived with Dusty Lynn Jacobs and Mrs. Rose Richardson, the mother of Rose Marie, in a four-room apartment in St. Louis, Missouri. Rose Marie Pace, Ben Pace and Rose Richardson all work at Pope's Cafeteria in St. Louis, Missouri, and Dusty Lynn Jacobs is kept during the day by a babysitter.

Since August 1962, Russell Gene Jacobs, has lived with respondents in a five-room modern home in Granite City, Illinois. Respondent, Eula Wood, is forty-seven years of age and employed as the manager of a hat shop in East St. Louis, Illinois. Respondent, Jack Wood, her husband, is fifty-eight years of age and employed as a chef in a St. Louis hotel. They have been married and lived together since 1943. Respondents hire a babysitter who comes into their home each day and stays while they are away at work. Russell Gene attended kindergarten in Granite City during the 1962–63 school year.

C. R. Jacobs, the father of the boy, remarried in the spring of 1963, and lives in Granite City, Illinois, with his second wife and her child by a previous marriage. He comes by the home of the respondents to see Russell Gene often and on occasions takes him fishing and to the park.

Although there is evidence to the effect that petitioner would rather work than stay at home with the

children; that she is not a good housekeeper and has in the past been treated for a venereal disease, there is no finding that she is unfit to have custody of Russell Gene nor do respondents contend that she is unfit. On the other hand, the evidence is quite clear that Russell Gene Jacobs has received good care while living with respondents and that respondents have a great deal of affection for the boy. There is no contention by petitioner that Russell Gene is not receiving proper care or affection. Although there is conflict in the evidence as to the percentage of Russell Gene's life which has been spent living with the respondents, the evidence indicates that Russell Gene has stayed with the respondents a great portion of his lifetime and appears to be happy living with them.

After hearing all of the evidence, the trial court filed a Memorandum of Decision wherein it found, among other things "That there is no court decree which confers custody of Russell Gene Jacobs; that Eula Woods, the paternal grandmother, aged forty-eight, and her husband, Jack Woods, have had the child in question living in their home at various intervals throughout his lifetime, and are fit and proper persons to have the care and custody of said child as they have evidenced a great interest in its welfare since his birth; that Rose Marie Pace is a fit and proper person to have the custody of her said son, and has not abandoned the child to the care of others; that it is for the best interests of Russell Gene Jacobs that he be awarded to the care and custody of his mother, Rose Marie Pace, in order that he have a home with his younger brother, who is less than a year younger than he."

The trial court then granted the prayer of the petition and ordered the child returned to the custody of the natural mother, Rose Marie Pace. The respondents, Eula Wood and Jack Wood, bring this appeal.

 It is settled law in Illinois that habeas corpus is a proper method of determining who is entitled to the custody of a child when there is a dispute between the natural parents of the child and third parties. People ex rel. Noonan v. Wingate, 376 Ill 244, 33 NE 2d 467. Upon a hearing in such a case, the trial court may inquire into the fitness of the contesting parties and determine the question of what is for the best interest of the child, which is the controlling question to be determined in such a case. The natural parent has a superior right to the custody of his child, however, the parent's superior right to have the custody of his child must always give way and yield to the welfare and best interest of the child and it is not necessary that the natural parent be found unfit in order to award custody of his child to a third party. Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 158 NE2d 613; People ex rel. Hermann v. Jenkins, 34 Ill App2d 255, 180 NE2d 359.

Since the trial court in the instant case found that the natural mother, Rose Marie Pace, was a fit and proper person to have custody of her child, Russell Gene, and further found that it was for the best interest of said child that his care and custody be awarded to his mother, the only issue presented on this appeal is whether or not the findings of the trial court are manifestly contrary to the weight of the evidence.

██ The trial court had the opportunity to observe the interested parties to this proceeding, to hear and observe the witnesses who testified and to observe their conduct and demeanor while testifying. His findings and conclusions should not be disturbed unless they are manifestly against the weight of the evidence. Giacopelli v. Florence Crittenton Home, supra; and People ex rel. Hermann v. Jenkins, supra.

From our review of the record, we cannot say as a matter of law that the findings of the trial court are manifestly against the weight of the evidence.

The judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

DOVE, P. J. and REYNOLDS, J., concur.