[Civ. No. 44374. Second Dist., Div. Two. Aug. 22, 1974.]

CHERYL H., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JAMES R., a Minor, Real Party in Interest.

## COUNSEL

David Keene Leavitt for Petitioner.

No appearance for Respondent.

M. Andrew Hudson for Real Party in Interest.

## Opinion

**FLEMING, Acting P. J.**—Cheryl H., age 16, petitions through her guardian ad litem for a writ of prohibition to vacate a superior court order which restrains Cheryl from surrendering control of her to-be-born child to an adoption agency.

The controversy began when James R., age 17, filed a complaint through his guardian ad litem seeking to establish his paternity of, and for a declaration of his rights in, the child to be born to Cheryl. At a hearing on an order to show cause, Cheryl and James stipulated:

"Cheryl is 16 years of age . . . and is pregnant out of wedlock. She has never been married and expects to give birth to a child within the next 20 days. Cheryl is convinced that the future welfare and best interests of both herself and her expected child demand that said child be adopted promptly following his birth by suitable adopting parents who are unconnected with Cheryl personally and who will raise her child in an environment totally separate and apart from her. Cheryl has requested . . . the Los Angeles County Department of Adoptions, a licensed adoption agency, to assist her in arranging for the child's placement into a suitable adoptive home immediately after his birth.

"Cheryl is a high school junior, has outstanding grades, and intends to continue her education at the university level leading to an eventual career in the medical field. She has been actively seeking university scholarships for this purpose.

"Cheryl left the home of her parents in . . . California, and came to reside with her aunt and uncle in Los Angeles to keep the fact of her unwed pregnancy and its humiliation and embarrassment from her friends. She is convinced her opportunity to successfully complete her education, her future prospects of a good marriage, her career, and her future social acceptance will be irreparably damaged and frustrated if she is forced to keep the child. She further feels she is now too young and unprepared to properly assume the responsibility of a child and is financially unable to support him. She believes that keeping her child would inevitably result in a life of poverty, deprivation and hardship for the child and herself.

"[James] is the father of Cheryl's expected child. James is 17 years old . . . He is a full time high school student and expects to enter college outside the State of California in September, 1974. His parents have

told Cheryl that they want to keep and raise her child 'until she and James get married.' Cheryl does not intend to marry James.

"Under no circumstances does Cheryl want James (or his parents) to have custody of her child. She feels that James is too young, has no more financial ability than she to provide for the child, and intends to leave home for college. James has told her he would simply give the child to his parents. Cheryl objects to her child being raised without a permanent mother and father or by grandparents. She further objects to placing her child with James or his parents because there is a continuing relationship between Cheryl, James and their respective families. Cheryl's father and James' father are in the military service, stationed at the same Air Force Base, and the families are in constant contact with each other. They live in the same neighborhood. They have many mutual friends who are presently unaware of Cheryl's pregnancy, who would subject Cheryl to social ostracism, contempt and humiliation were she to return home and place her child with James or his parents. She would be forced daily to face the reality and nearby existence of her child in the custody of others over whom she would have no influence or control. The child would be placed in the unhealthy position of knowing Cheryl to be his mother, but having to respond to others as parents.

"Were Cheryl to permit anyone close to her and her family to keep and maintain custody of her child, it would forever exacerbate and perpetuate the psychological pain, humiliation and trauma. caused Cheryl by her pregnancy out of wedlock.

"Were Cheryl required to choose between keeping her child and delivering it to James or his family, she would be forced to keep her child herself.

"Cheryl's child was conceived . . . when Cheryl was, and James knew her to be only 16 years of age.

". . . . . . . . . . . . . . . . . . . .

"James has not alleged the child to be a legitimate child and has set forth no facts tending to show acts of legitimation on his part. James and Cheryl have never cohabited as husband and wife, or at all; James has not received said child into his family, has not contributed to the support of said child, and has not otherwise legitimated said child.

"Cheryl is informed and believes and thereon alleges that so long as litigation is pending in Respondent Superior Court, or an appeal therefrom, neither she nor the Los Angeles County Department of Adoptions,

nor any other licensed adoption agency, can find or furnish suitable and permanent adopting parents for her child; and said child will be forced to suffer a prolonged period of foster care."

On the basis of these stipulated facts the superior court made the following order:

"The defendant Cheryl [H] is restrained and enjoined from surrendering the child for adoption and further restrained from taking any steps to place said child in an agency for the purpose of having the child adopted. This shall not preclude her from placing the child or authorizing the placing of the child in a foster home subsequent to the child's birth if the mother feels that to be in the best interests of the child."

Subsequent to the entry of the superior court's order, the child was born and placed in a foster home. Although we have heretofore stayed the superior court's restraining order pending the outcome of this petition, counsel have advised us that proceedings to place the child for adoption have come to a standstill.

The cause presents perplexing problems of substance and procedure arising out of the conflicting interests and aspirations of the parties concerned. Existing California law gives no status to fathers of illegitimate children, but evolving constitutional concepts of due process and equal protection now recognize certain rights in the illegitimate father. Yet the exercise of these paternal rights may under certain circumstances result in the loss of the illegitimate mother's ability to arrange her affairs in such fashion as to minimize the adverse consequences of an unsought and unwanted pregnancy.

1. ■ *California Law.* Under existing California statutory and decisional law, the father of an illegitimate child possesses no unconditional rights in the child. (See *Plight of the Putative Father in California Child Custody Proceedings: A Problem of Equal Protection,* 6 U.C.Davis L.Rev.1, 3-11.) The mother is entitled to custody, services, and earnings of the child to the exclusion of the father (Civ. Code, § 200; *Guardianship of Smith,* 42 Cal.2d 91, 93 [265 P.2d 888, 37 A.L.R.2d 867]), and she may place the child for adoption without the father's consent. (Civ. Code, §§ 224m and 226.1; *Guardianship of Truschke,* 237 Cal.App.2d 75, 79-80 [46 Cal.Rptr. 601].) The father may legitimate the child by marrying its mother (Civ. Code, § 215) or by publicly acknowledging it as his own, receiving it into his family, and treating it as though it were a legitimate child (Civ. Code, § 230), but the mother may effectively preclude legiti-

mation where, as here, she refuses to marry the father or relinquish custody of the child to him. (*Adoption of Irby*, 226 Cal.App.2d 238, 242 [37 Cal.Rptr. 879]; see *Adoption of Pierce*, 15 Cal.App.3d 244, 248-251 [93 Cal.Rptr. 171].)

By contrast a legitimate father, like a legitimate or illegitimate mother, enjoys a full panoply of parental rights, including custodial preference under Civil Code section 4600—which states that before custody of a child can be awarded to a nonparent without the consent of the parents, the court "shall make a finding that an award of custody to a parent would be detrimental to the child." The Supreme Court recently declared that section 4600 permits an award of "custody to a nonparent against the claim of a parent only upon a clear showing that such award is essential to avert harm to the child. A finding that such an award will promote the 'best interests' or the 'welfare' of the child will not suffice." (*In re B.G.*, 11 Cal.3d 679, 699 [114 Cal.Rptr. 444, 523 P.2d 244].)

2. *Stanley* v. *Illinois*. California law, however, must be read in light of the recent United States Supreme Court opinion in *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]. Stanley lived with Joan for 18 years during which time they had three children. When Joan died two of the children were declared wards of the state and placed with court-appointed guardians. Illinois statutes extended no parental rights to illegitimate fathers so circumstanced, and it limited parental rights to legitimate fathers and legitimate and illegitimate mothers. The Supreme Court concluded, "that, as a matter of due process of law, Stanley was entitled to a hearing on his fitness as a parent before his children were taken from him and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment." (405 U.S. at p. 649 [31 L.Ed.2d at p. 557].)

Had Stanley lived in California, on the death of the children's mother he would have been entitled to a hearing before the children could have been separated from him and removed from his home, and he would have been eligible to obtain permanent custody of the children upon a proper showing. (See *Guardianship of Smith*, 42 Cal.2d 91, 93 [265 P.2d 888, 37 A.L.R.2d 867].) Likewise under California law, he could have satisfied all requisites for legitimation of the children. Existing California law, therefore, harmonizes with *Stanley* when the latter is considered solely as direct precedent. Nevertheless, *Stanley* suggests the possibility of further

development in California law relating to paternal rights in illegitimate children, not only because of the opinion's emphasis on the "essential" right of a father to raise his children and his "cognizable and substantial" interest in retaining their custody (405 U.S. at pp. 651, 652 [31 L.Ed.2d at pp. 558, 559]) but also because of its strong implication that an illegitimate father who has never had custody of his child, is entitled, like other parents, to notice and hearing of any proceeding which might bring about a change in legal custody of the child.

In reliance on *Stanley* and two related rulings of the United States Supreme Court vacating other state-court decisions (*State* v. *Lutheran Soc. Serv. of Wis. & Upper Mich.*, 47 Wis.2d 420 [178 N.W.2d 56], vacated *sub. nom. Rothstein* v. *Lutheran Social Services*, 405 U.S. 1051 [31 L.Ed.2d 786, 92 S.Ct. 1488]; *Vanderlaan* v. *Vanderlaan,* 126 Ill.App. 2d 410 [262 N.E.2d 717], vacated 405 U.S. 1051 [31 L.Ed.2d 787, 92 S.Ct. 1488]), the Illinois Supreme Court held unconstitutional provisions of that state's Adoption and Paternity Acts which permit adoption of illegitimate children without notice and opportunity for hearing to the father. (*People* ex rel. *Slawek* v. *Covenant Children's Home,* 52 Ill.2d 20 [284 N.E.2d 291, 292].) And a New York trial court has said in a case where a maternal grandmother sought custody of an illegitimate child who had been living with the natural father for eight years: "It was held [in *Stanley*] that it was violative of due process to deprive an illegitimate father of custody of his children without a determination of his fitness, where such a determination was required precedent to custody deprivation in the case of a legitimate parent or unwed mother." (*People* ex rel. *Blake* v. *Charger,* 76 Misc.2d 577 [351 N.Y.S.2d 322, 327].)

3. ■ *This Case.* Whatever may be the ultimate implications of *Stanley* for California law—and we think the significant aspect of *Stanley* involved *deprivation* and *change* of custody rather than initial award of custody—we conclude that the order of the superior court in this case was improvident, for James has no present custodial rights in the child as against the mother (Civ. Code, § 200.) Assuming he has a right to notice and hearing of any attempt to effect a change in legal custody by an award of the child to a nonparent or by an adoption (Civ. Code, § 4600; *In re B.G.,* 11 Cal.3d 679, 689 [114 Cal.Rptr. 444, 523 P.2d 244]), that right to notice and hearing does not preclude Cheryl from initiating proceedings to place the child for adoption. The superior court's order apparently contemplated further proceedings to declare James' rights, yet no hearing has been asked for or scheduled. Meanwhile Cheryl's right to extricate herself from her predicament as the teenage mother of an

illegitimate child and minimize the long-term adverse consequences of her imprudence has been stultified.

On the stipulated facts, James has presented an unsympathetic case to support any claim to custody of the child. Unlike the father in *Stanley*, he has not previously had physical custody of the child, nor has he taken any steps to support or legitimate the child. A minor and a high school student, he does not intend to take personal custody or assume personal responsibility for the child's support. He cannot, of course, assign his parental rights to other persons. (*Matter of Hart,* 21 Cal.App. 30 [130 P. 704].) Under these circumstances an award of custody to James would appear detrimental to the interests of the child. However, on the basis of the meager and preliminary record before us we do not undertake to pass on the merits of the controversy, nor do we determine the extent of James' rights to prevent adoption of the child by a nonparent or obtain custody of the child for himself. It is sufficient to recognize that he is entitled to notice of any proceeding involving change in legal custody. Since Cheryl has conceded James' paternity and stipulated to notice of any adoption proceedings, no reason exists to delay commencement of such proceedings. Obviously, time is of the essence in establishing a permanent home for the child.

Let a peremptory writ issue vacating the order of the superior court which restrains Cheryl from surrendering the child for adoption purposes and from placing it with an adoption agency.

Compton, J., and Beach, J., concurred.