*In re* PETITION OF HECTOR NEGRON, Plaintiff-Appellant.

(No. 61304;

First District (3rd Division)—October 16, 1975.

McGLOON, P. J., dissenting.

Julian A. Levey, of Chicago, for appellant.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The plaintiff, Hector Negron, is the father of a daughter born out of wedlock in December 1963. The child's mother died in 1966. In January 1972, the Circuit Court of Cook County entered a decree of adoption awarding the child to foster parents under the provisions of the Illinois Adoption Act (Ill. Rev. Stat. 1971, ch. 4, pars. 9.1—1, 9.1—8) which permitted a child's adoption upon the death of its mother without notice to or consent of the unwed father.

In a petition for a writ of habeas corpus filed in March 1974, Negron asked that the decree of adoption be vacated and that custody of the child be given to him. The motion of the adoptive parents to dismiss the petition was granted.

Negron's petition alleged that he was the father of the child, had admitted his paternity in court and had contributed to the girl's support during the years 1964, 1965 and 1966; that she lived with her maternal grandmother with his consent following her mother's death; that he

moved to New York due to the force of economic circumstances and had resided there from 1969 to 1972, and that the Cook County Department of Welfare consented to the adoption of his child, had knowledge of his paternity, but failed to give him notice of the adoption proceedings. The petition further alleged that Negron was a suitable person to have custody of the child, but that the entry of the adoption decree without notice denied him equal protection under the fourteenth amendment to the United States Constitution and denied him the opportunity of proving that he, the natural father, was a fit and proper person to have custody of his own daughter. The trial court heard argument on the legal issues but did not hear evidence.

Of central importance to this case are *Stanley v. Illinois* (1972), 405 U.S. 645, and *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill.2d 20, 284 N.E.2d 291. In *Stanley* an unwed father sought custody of two of his children who had lived with him and their mother until the mother's death. They were then declared wards of the State and placed in the hands of court-appointed guardians. The court ruled that the State's conclusive presumption that an unwed father was unfit to retain custody of his children upon the mother's death violated due process and that its assumption of custody of the children of married parents, divorced parents and unmarried mothers only after a hearing and proof of neglect, while not affording the same to unwed fathers, denied them equal protection of the law. In *Slawek* an unwed father sought to obtain custody of his child from the adoptive parents. He argued that the adoption was granted without notice to him and without his consent under provisions of the Illinois Adoption Act (Ill. Rev. Stat. 1969, ch. 4, pars. 9.1—1, 9.1—8)—the two provisions here in issue—and that these provisions violated the equal protection clause of the Federal Constitution. In addition, he argued that section 12 of the Paternity Act (Ill. Rev. Stat. 1969, ch. 106¾, par. 62) denied him custody of his child and that this provision was also unconstitutional. Relying upon *Stanley v. Illinois*, the *Slawek* court held that the three statutes were unconstitutional and that an unwed father was entitled to a hearing in adoption proceedings. Consequently, it vacated the judgment against the father and remanded the case for further proceedings.

At issue in this appeal is the prospective or retroactive effect of the *Stanley* and *Slawek* decisions and whether the trial court erred in not applying those decisions retroactively to the Negron adoption proceedings which were held a few months before *Stanley* and *Slawek* were decided.

Negron contends that retroactive application was intended in the *Stanley* decision because the case was remanded "to grant the petitioner

a hearing on the merits of his case," and that *Slawek* should be given retroactive effect simply because its ruling applied to the adoption proceedings then being attacked. But *Linkletter v. Walker* (1965), 381 U.S. 618, suggests that this is an incorrect inference to draw from these two cases. There the court announced that the exclusionary rule propounded in *Mapp v. Ohio* (1961), 367 U.S. 643 (State courts must exclude evidence if searches and seizures violated the fourth amendment) would not be given retroactive effect. The court so held although it conceded that it had applied the *Mapp* rule to reverse the defendant Mapp's conviction and that courts of appeal had applied the decision to cases still pending on direct review at the time it was rendered. In fact the court came closer to the point of complete prospectivity by refusing to permit defendants whose cases were still pending on direct review to benefit from the new interrogation requirements set forth in *Escobedo v. Illinois* (1964), 378 U.S. 478, and *Miranda v. Arizona* (1966), 384 U.S. 436, by limiting the rulings in those two cases, except for the parties therein, to proceedings where the trial had begun subsequent to the date of those two decisions. *Johnson v. New Jersey* (1966), 384 U.S. 719. See also *Desist v. United States* (1969), 394 U.S. 244.

In *Linkletter* the court set forth criteria for determining when a ruling should be given retroactive effect. (See also *Stovall v. Denno* (1967), 388 U.S. 293.) Based on these principles the court held in *Williams v. United States* (1971), 401 U.S. 646, 653, that:

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances."

On the other hand, the court has indicated that the lesser weight given to reliance by public authorities and to the effect on the administration of justice may be inappropriate when the case does not deal with,

"* * * those constitutional interpretations bearing on the use of evidence or a particular mode of trial. * * * Guarantees that do not relate to these procedural rules cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis. For the purpose and effect of the various constitutional guarantees vary sufficiently among themselves so as to affect the necessity for prospective rather than retrospective application." *Robinson v. Neil* (1973), 409 U.S. 505, 508.

See also *United States v. Peltier* (1975), 422 U.S. 531, 45 L.Ed.2d 374, 95 S.Ct. 2313, where the court denied retroactive application of its decision in *Almeida-Sanchez v. United States* (1973), 413 U.S. 266, which held that warrantless automobile searches by border patrols conducted about 25 miles from the Mexican border without probable cause violate the fourth amendment.

The criteria used by the Supreme Court to determine whether a decision in a civil case should be applied prospectively are stated in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 106-07:

> "First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed * * *. Second, it has been stressed that 'we must * * * weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' * * * Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'"

Subsequently, in *Lemon v. Kurtzman* (1973), 411 U.S. 192, the court particularly stressed the reliance factor when it denied retroactive application of its decision invalidating Pennsylvania's program of contracting with church-related schools to provide secular classes. It noted that to give the ruling retroactive effect would deny the schools reimbursement for services· rendered and would impose upon them substantial burdens difficult to meet. Indeed, this stress upon reliance formed the basis of the court's statement in *Chicot County Drainage District v. Baxter State Bank* (1940), 308 U.S. 371, that a statute's existence prior to its being declared unconstitutional "is an operative fact that cannot be ignored. The past cannot always be erased by a new judicial declaration."

■■ A similar emphasis upon reliance is found in Illinois decisions. (See, e.g., *Bassi v. Langloss* (1961), 22 Ill.2d 190, 174 N.E.2d 682, and *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill.2d 11, 163 N.E.2d 89, *cert. denied*, 362 U.S. 968.) Although it has been the position of Illinois courts of review that prospective or retroactive application of their decisions is within their discretion (*Molitor v. Kaneland Community Unit Dist.*; *Naramore v. Colquitt* (1973), 15 Ill.App.3d 954, 305 N.E.2d 662; *Reich v. Board of Fire & Police Commissioners* (1973), 13 Ill.App.3d 1031, 301 N.E.2d 501), the general, where exercising that discretion, the guidelines laid out by the Federal Supreme Court are followed. In

*People v. Ellis* (1973), 53 Ill.2d 390, 292 N.E.2d 728, the court said that three criteria are relevant for determining the retroactivity of a new standard: the purpose to be served by it, the extent of reliance on the existing standards, and the effect on the administration of justice of a retroactive application of the new standard. In *People v. Meyerowitz* (1975), 61 Ill.2d 200, 335 N.E.2d 1, the court explained that if the new standard does not go to the integrity of the fact-finding process, if the conduct under question was permissible at the time it was committed under rules upon which officials in good faith relied, if the purpose of the new rule would not be thwarted by prospective application, and retroactive application would cause a substantial burden on the administration of justice, then the new rule will be given prospective application. See also *People v. Wills* (1975), 61 Ill.2d 105, 330 N.E.2d 505, where the court held the ruling made in that case (that on a plea of guilty, a defendant must be admonished as to mandatory parole terms) would only be applied subsequent to the date of the new ruling.

The criteria announced in *Chevron Oil Co. v. Huson* point against permitting the retroactive application of *Stanley v. Illinois* and *People ex rel. Slawek v. Covenant Children's Home* to the present case. The *Chevron* court observed that a decision following a novel or previously uncharted course would less likely be given retroactive effect. *Slawek* relied upon *Stanley*, which, in turn, overruled the clear decision of the Illinois Supreme Court to the opposite effect (*In re Stanley* (1970), 45 Ill.2d 132, 256 N.E.2d 814), without relying upon precedent that unmistakably or clearly foreshadowed its decision. Moreover, *Chevron* stated that retroactivity should be considered in light of the new rule's purpose. *Stanley* involved deprivation and change of custody where the children had been living with their unwed father before being removed from his home following the death of their mother. This led the court to emphasize the significance of the family and of affording it protection as a basis for overturning the Illinois decision in *In re Stanley*. But Negron seeks to disrupt a settled family structure and is thus engaged in an effort whose purpose is quite different from that found in *Stanley*. See *Cheryl H. v. Superior Court* (1974), 41 Cal.App.3d 273, 115 Cal. Rptr. 849. Even in *Slawek* (where the alleged father did obtain the right to a hearing) a similar focus upon the importance of the family tie is seen. The court, in remanding the case, quoted *Rothstein v. Lutheran Social Services* (1972), 405 U.S. 1051 (another adoption case in which the putative father was not notified of his child's adoption): "The judgment is vacated and the case is remanded * * * for further consideration * * * and with due consideration for the completion of the adoption

proceedings and the fact that the child has apparently lived with the adoptive family for the intervening .period of time.'" (52 Ill.2d 20, 22.) To the extent, therefore, that the policy of preserving and protecting an established family unit underlies both *Stanley* and *Slawek*, the argument for the retroactive application of those decisions to the present case is weakened.

■2   Although an evaluation of each of the factors enumerated by the *Chevron* court—foreseeability, purpose and reliance—points away from permitting retroactive application of *Stanley* and *Slawek*, we feel that the reliance factor weighs most heavily against such application. In Illinois the paramount concern in matters dealing with child custody must always be the welfare of the child. In this regard the reasoning in the case of *Crist v. New .Jersey Division of Youth & Family Services* (1974), 128 N.J. Super. 402, 320 A.2d 203, is pertinent. There the court held that due process and equal protection required that indigent parents threatened with removal of children from their home by a public agency were entitled to counsel free of charge. When considering the constitutional arguments asserted by the indigent parents, the court relied extensively upon *Stanley v. Illinois,* but decided to give its ruling purely prospective effect. The court reasoned: "In those situations where rights have previously been terminated and a new and hopefully permanent psychological environment established for the child, the court feels that the effect on, the administration of justice as well as the potential conflicts which would be generated for the children outweighs the desirability of retroactivity." 128 N.J. Super. 402, 417, 320 A.2d 203, 211.

■■   According to Negron's own petition, he apparently never lived with his child, contributed to the child's support in only three out of her some eleven and a half years of life, and waited about two years after she was adopted to begin his attack on the adoption proceedings. To permit retroactivity in this case would allow any unwed father whose child was adopted in conformity with existing laws before the spring of 1972 to open up adoption proceedings which placed his offspring with foster parents. In each instance the State would have to grant a hearing regardless of how indifferent the father had been to the well-being of the child.

The foregoing considerations indicate that prospective application is proper and therefore the judgment is affirmed.

Affirmed.

McNAMARA, J., concurs.

Mr. PRESIDING JUSTICE McGLOON, dissenting:

I respectfully dissent from the decision of the majority and would give retroactive effect to the decisions in *Stanley v. Illinois* (1972), 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208, and *People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill.2d 20, 284 N.E.2d 291. (See generally *State ex rel. Lewis v. Lutheran Social Services* (1973), 59 Wis.2d 1, 207 N.W.2d 826, where the Wisconsin Supreme Court refused to give *Stanley* prospective effect only.)

While I share the concern of my colleagues in the majority that applying *Stanley* and *Slawek* retroactively would enshroud in uncertainty those adoption decrees entered in conformity with existing law prior to *Stanley* and *Slawek*, I do not foresee any great hardship in giving retroactive effect to those decisions. As to those decrees of adoption entered prior to *Stanley* and *Slawek* and in conformity with the law as it existed prior to those decisions, only the unwed father who was not given notice could attack the validity of the adoption decree. Furthermore, the adoption decree would be set aside only insofar as it affects the unwed father or persons claiming under him. As provided in section 20 of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, par. 9.1—20):

\* \* \*

"As to persons over whom the court had jurisdiction or persons claiming under them, it shall be no basis for attack as to the validity of an adoption decree that the court lacked jurisdiction over some other person or persons over whom it should have had jurisdiction. If, upon attack by a person or persons over whom the court lacked jurisdiction, or persons claiming under them, an adoption decree is set aside, it shall be set aside only insofar as it affects such person or persons."

See also *Sullivan v. People ex rel. Heeney* (1906), 224 Ill. 468, 79 N.E. 695; *In the Estate of Bohn* (1923), 308 Ill. 214, 139 N.E. 64.

I agree with the majority that in the instant case the interests of the child are paramount (*People ex rel. Edwards v. Livingston* (1969), 42 Ill.2d 201, 247 N.E.2d 417) and that the policy of preserving and protecting an established family unit underlies both *Stanley* and *Slawek*. For these reasons I would vacate the judgment and remand the cause " '\* \* \* for further consideration in light of *Stanley v. Illinois*, 405 U.S. 645 (1972), and with due consideration for the completion of the adoption proceedings and the fact that the child has apparently lived with the adoptive family for the intervening period of time.' " (*People ex rel. Slawek v. Covenant Children's Home* (1972), 52 Ill.2d 20, 22, 284 N.E.2d 291, 292; *Rothstein v. Lutheran Social Services* (1972), 405 U.S. 1051,

92 S.Ct. 1488, 31 L.Ed.2d 786.) In determining custody, the best interests of the child are paramount and the right of a natural parent to the custody of his or her child must yield to the best interests of that child. (*Giacopelli v. Florence Crittenton Home* (1959), 16 Ill.2d 556, 158 N.E.2d 613.) Furthermore, there is no necessity that the natural parent be found unfit before custody can be awarded to the adoptive parents. (*People ex rel. Pace v. Wood* (1964), 50 Ill.App.2d 63, 200 N.E.2d 125.) Thus, it is my belief that in the vast majority of cases of this type the best interests of the child would require that the child remain in the custody of the adoptive parents. However, the unwed father should be entitled to an evidentiary hearing. I can foresee the rare case of the unwed father who has been a good and loving father to his child, who for some reason, without knowledge on his part, has been unjustly deprived of the custody of his child. Depending on the facts of each case, there could exist the rare case where it would be in the best interests of the child that custody of the child could be restored to the unwed father. At the very least the unwed father is entitled to an evidentiary hearing.

For the above reasons I would vacate the judgment of the trial court and remand the cause for a hearing.