(No. 79668.—

ROBERT ALECKSON *et al.*, Appellees, v. THE VIL
LAGE OF ROUND LAKE PARK *et al.* (Elizabeth
Ohlinger *et al.*, Appellants).

*Opinion filed April 17, 1997.*

HARRISON, J., joined by HEIPLE, C.J., specially concurring.

Brian Albert Schroeder, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellants.

James T. Harrison, David R. Skowron and Robert W. Funk, of Harrison Law Offices, of Woodstock, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

The dispositive issue in this appeal is whether the appellate court may decline to apply one of its prior, published opinions to a case which was pending at the time the previous decision was issued. We conclude that the appellate court may.

## BACKGROUND

The litigation between the parties in this case

centers on a promotional examination for the rank of sergeant in the Round Lake Park police department. Plaintiffs, four members of the department, filed an action for declaratory and injunctive relief in the circuit court of Lake County on November 12, 1993. The complaint named as defendants the board of fire and police commissioners of the Village of Round Lake Park (Board); three board members in their individual capacities; the Round Lake Park chief of police, Daniel Veit; and the Village of Round Lake Park. Plaintiffs alleged that defendants violated various sections of the Illinois Municipal Code (65 ILCS 5/10—2.1—1 *et seq.* (West 1992)) during a promotional examination administered by defendants on November 12, 1992. Plaintiffs sought, *inter alia*, (i) a declaration that the exam was void *ab initio*, (ii) an injunction against those who passed the exam from holding the rank of sergeant, and (iii) an injunction directing the Board to administer a promotional test which comports with the requirements of the Municipal Code.

Defendants subsequently moved to dismiss the complaint pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1992)). In the motions, defendants argued, among other things, that plaintiffs' action for declaratory and injunctive relief was, in essence, an action for administrative review. As such, the action was subject to the requirement that all complaints seeking review of decisions of administrative agencies be filed within 35 days of service of the final administrative decision. 735 ILCS 5/3—103 (West 1992). Defendants, therefore, asserted that plaintiffs' complaint, filed one year after the promotional decisions were made, was untimely. According to defendants, plaintiffs' decision to challenge the promotions by way of a declaratory and injunctive action rather than proceeding under administrative review resulted in the loss of their right to seek judicial relief.

In response, plaintiffs argued that actions concerning police promotions fell beyond the purview of administrative review and that, therefore, the one-year statute of limitations for actions against local public entities applied. In support of this argument, plaintiffs pointed out that the Second District of the Appellate Court considered the action outside the scope of the Administrative Review Law. See, *e.g.*, *Barrows v. City of North Chicago*, 32 Ill. App. 3d 960 (1975); *Foster v. Board of Fire & Police Commissioners*, 81 Ill. App. 3d 48 (1980). Plaintiffs noted that because the circuit court of Lake County was situated in the Second District, the circuit judge was bound to follow the law as set forth in *Barrows* and its progeny. *Barrows* notwithstanding, the court ruled that plaintiffs' action fell under the Administrative Review Law and dismissed the complaint with prejudice because plaintiffs had not complied with the 35-day filing requirement contained in the Administrative Review Law. 735 ILCS 5/3—103 (West 1992). Plaintiffs appealed.

During the pendency of plaintiffs' appeal, the Second District issued its opinion in *Mueller v. Board of Fire & Police Commissioners*, 267 Ill. App. 3d 726 (1994). In *Mueller*, the court "reconsidered [its] decisions in the *Barrows* line of cases and *** decided to overrule them regarding the applicability of the Review Law." *Mueller*, 267 Ill. App. 3d at 731. As a result, the issue in the pending appeal was no longer whether the circuit judge erred by not following *Barrows* and its progeny. Rather, the relevant inquiry became whether the appellate court should apply the *Mueller* decision retroactively. The appellate court declined to do so.

In reaching its conclusion, the appellate court initially noted that plaintiffs here filed their complaint in a manner which "complied with second district case law as it existed at the time." No. 2—94—0987 (unpub-

lished order under Supreme Court Rule 23). The court recognized that its opinion in *Mueller* broke with the district's past precedent and that to give it retroactive effect would cause injustice and hardship. Accordingly, the court concluded that *Mueller* should not be given a retroactive application in this case. We subsequently granted defendants leave to appeal. 155 Ill. 2d R. 315.

On appeal before this court, defendants maintain solely that the appellate court does not have the authority to apply *Mueller* prospectively. In defendants' view, only this court may declare whether a decision will apply prospectively. Alternatively, defendants maintain that even if the appellate court possesses such a power, the court improperly exercised it in this case. Plaintiffs, on the other hand, argue that the appellate court does have such a power and that it exercised it properly in the instant case. We agree with plaintiffs and, therefore, affirm the judgment of the appellate court.

## ANALYSIS

### I

Generally, when a court issues an opinion, the decision is presumed to apply both retroactively and prospectively. *Deichmueller Construction Co. v. Industrial Comm'n*, 151 Ill. 2d 413, 416 (1992); 21 C.J.S. *Courts* § 148 (1990). That presumption can be overcome in two types of circumstances. First, the issuing court itself may expressly state that its decision will be applied prospectively only. See, *e.g.*, *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11 (1959). Second, a later court may, under certain circumstances, override the presumption by declining to give the previous opinion retroactive effect, at least with respect to the parties appearing before the later court. The present case falls under the latter category. Accordingly, we will confine our discussion to cases which involve situations

in which a later court is deciding whether to give a previous decision prospective effect only.

We begin our analysis with the seminal case concerning the prospective application of a civil decision, *Chevron Oil Co. v. Huson*, 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971). As in this case, the issue before the United States Supreme Court in *Chevron* concerned whether a previous decision, which shortened a statute of limitations, should be applied to a party who had filed his action prior to the issuance of the opinion. Specifically, plaintiff Huson brought a personal suit for damages three years after he was injured. His complaint, when filed, was timely under existing law. While the matter was pending in the trial court, the United States Supreme Court issued its decision in *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 23 L. Ed. 2d 360, 89 S. Ct. 1835 (1969). In *Rodrigue*, the Court determined that actions such as Huson's were governed by a different statute of limitations, one which gave plaintiffs only one year to bring suit. The Court in *Rodrigue* was silent as to its retroactive effect, but an application of its holding to Huson would have rendered his cause of action time-barred. Huson, therefore, argued that *Rodrigue* should be applied prospectively because he had relied on the previous law in bringing his action and suffered a hardship as a result of that reliance. Huson took his case to the Supreme Court, which ultimately agreed with his arguments.

The Court constructed a three-prong analysis to consider the question of prospective application to Huson's case. The analysis focused on whether "the decision to be applied nonretroactively *** establish[ed] a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation] or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron*, 404 U.S.

at 106-07, 30 L. Ed. 2d at 306, 92 S. Ct. at 355. Once this threshold requirement is satisfied, the question of prospective or retroactive application turns on considerations of (i) whether, given the purpose and prior history of the new rule, its operation will be retarded or promoted by prospective application, and (ii) whether prospective application is mandated by the balance of equities. *Chevron*, 404 U.S. at 106-07, 30 L. Ed. 2d at 306, 92 S. Ct. at 355. Noting that plaintiff had followed the law as it existed at the time he filed suit, the Court concluded that notions of equity and fairness warranted a prospective application under the specific facts of the case.

We note that in recent years, the United States Supreme Court has attempted to limit the applicability of the *Chevron* test with respect to its own decisions which announce a new rule of federal law. See *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 131 L. Ed. 2d 820, 115 S. Ct. 1745 (1995); *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 125 L. Ed. 2d 74, 113 S. Ct. 2510 (1993). In these cases, the Court has held that, under the supremacy clause, state courts could not change a legal outcome that federal law, as interpreted by the Supreme Court, otherwise dictates. See *Reynoldsville*, 514 U.S. at 753, 131 L. Ed. 2d at 826-27, 115 S. Ct. at 1749; *Harper*, 509 U.S. at 96-97, 125 L. Ed. 2d at 86, 113 S. Ct. at 2517. Although we recognize this limitation on using the *Chevron* test, these later statements by the Court have no application to the case at bar. In this case, the appellate court did not purport to disregard a federal rule announced by the Supreme Court. Rather, the appellate court was concerned solely with deciding the effect of one of its own prior decisions. Therefore, our decision today is strictly confined to decisions of Illinois courts concerning Illinois law.

The three-part prospectivity analysis utilized in

*Chevron* was adopted for the first time in Illinois by our appellate court in *In re Petition of Negron,* 33 Ill. App. 3d 112 (1975). In *Negron,* the appellate court addressed whether *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), and *People ex rel. Slawek v. Covenant Children's Home,* 52 Ill. 2d 20 (1972), should be applied retroactively to adoption proceedings which were held a few months before the two decisions were issued. These higher court decisions had declared unconstitutional the conclusive presumption that an unwed father was unfit to retain custody of a child after the mother's death. In ruling that a prospective application was warranted, the appellate court specifically focused upon the litigants' reliance on the previously existing law and the substantial burdens caused by the change in law. Like the United States Supreme Court in *Chevron,* the appellate court based its decision on notions of equity and fairness. *Negron,* 33 Ill. App. 3d at 115-16.

Although this court has never expressly recognized the appellate court's authority to give nonretroactive effect to a previous decision, we *implicitly* recognized it in *Board of Commissioners of Wood Dale Public Library District v. County of Du Page,* 103 Ill. 2d 422 (1984). In *Board of Commissioners,* this court, for the first time, adopted the *Chevron* test. In doing so, we specifically cited the appellate court's decision in *Negron* and its reference to *Chevron. Board of Commissioners,* 103 Ill. 2d at 429. Notably, this court, in no way, evinced any disapproval of the appellate court's action in *Negron* in reviewing the prospectivity of either a United States Supreme Court opinion or an opinion of this court. Nor did this court indicate that the appellate court's review was inappropriate. Rather, this court ultimately concluded that its own previous decision should be given a prospective application to the case before it in the

interests of equity and fairness, so as to avert the hardship and injustice caused by the losing litigant's reliance on previously existing law. *Board of Commissioners*, 103 Ill. 2d at 430-32.

Parenthetically, we note that this court, in *Lannon v. Kosco*, 158 Ill. 2d 535 (1994), recently addressed the question of whether to give a prospective application to one of its earlier opinions. *Lannon*, however, does not address the precise issue presented in this case because the previous decision in question there, *i.e.*, *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991), contained what this court considered an express statement concerning its retroactive effect, namely, our denial of the petition for rehearing which specifically requested that the decision be given prospective effect (see *Kotecki*, 146 Ill. 2d at 174 (Freeman, J., dissenting upon denial of rehearing)). *Lannon*, 158 Ill. 2d at 539. *Lannon* is inapposite to the case at bar because it did not involve a situation in which the decision to be given nonretroactive effect was silent as to its retroactive application.

Notwithstanding the above, defendants insist that language contained in some of our previous decisions indicates that it is only within the power of the highest court of this state to give a decision prospective or retroactive application. See, *e.g.*, *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 529 (1993); *Deichmueller Construction Co. v. Industrial Comm'n*, 151 Ill. 2d 413, 416 (1992); *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 328 (1989); *Molitor v. Kaneland Community Unit District No. 302*, 18 Ill. 2d 11, 28 (1959). Ironically, defendants even cite *Board of Commissioners* as authority for this contention. We stress, however, that in none of these cases did this court ever expressly limit to the Illinois Supreme Court alone the power to determine the prospective application of a prior decision to a case which was pending at the time the prior deci-

sion was issued. Indeed, whether the appellate court has the authority to so act was never an issue for our review in any of the cases cited by defendants for this proposition. Moreover, our review of the decisions in *Chevron*, *Board of Commissioners*, and *Negron* reveals that, in each case, the reviewing court applied the previous decision prospectively to the later case in the interests of equity and fairness and not because it possessed any "power" with respect to the retroactive question. Therefore, past decisional law indicates that the appellate court in this case did not, as defendants suggest, usurp a power exclusively vested in this court.

Additional support for the appellate court's power to act in this case can be found in Supreme Court Rule 366. That rule provides in pertinent part:

> "In *all* appeals the reviewing court may, in its discretion, and on such terms as it deems *just* \*\*\*

> \* \* \*

> (5) enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the enforcement of a judgment, *that the case may require*." (Emphasis added.) 155 Ill. 2d R. 366(a)(5).

Implicit in Rule 366 is the recognition that *all* reviewing courts enjoy the power to exercise discretion in a just manner so as to do equity, factors which, as we have already noted, play a great role in considering whether to apply a previous decision prospectively. To hold that the appellate court could not apply its own prior decision prospectively in this case would frustrate that court's ability to do equity in the cases it reviews. We decline to handcuff our appellate court in such a manner.

In view of the foregoing principles, we hold that the appellate court in this case had the authority to apply its decision in *Mueller* prospectively.

## II

In their final contention, defendants maintain that even if the appellate court had the power to apply *Mueller* prospectively, the appellate court erred in concluding that a prospective application was warranted under the facts of this case. We disagree.

The first factor of the *Chevron* test is whether the decision to be applied nonretroactively established a new principle of law, either by overruling clear past precedent on which litigants have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed. See *Chevron*, 404 U.S. at 106, 30 L. Ed. 2d at 306, 92 S. Ct. at 355. In our view, it is beyond dispute that plaintiffs relied on "clear past precedent" when they filed their complaint in this action. At that time, *Barrows* had been the controlling authority in the Second District for 20 years. In fact, the decision had been consistently reaffirmed by the Second District. See *Foster v. Board of Fire & Police Commissioners*, 81 Ill. App. 3d 48 (1980); *Sullivan v. Board of Fire & Police Commissioners*, 103 Ill. App. 3d 167 (1981). Nevertheless, defendants argue that plaintiffs' reliance on the *Barrows* line of cases was unjustified because it represented a minority viewpoint in Illinois—the First, Third and Fifth Districts of the Appellate Court had taken the opposite view. Defendants, however, ignore the fact that when conflicts arise amongst the districts, the circuit court is bound by the decisions of the appellate court of the district in which it sits. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539-40 (1992). In view of these circumstances, we do not think it was unreasonable for plaintiffs, faced with conflicting appellate authority, to rely upon the authority from their home appellate district.

The second *Chevron* factor consists of " 'weigh[ing] the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and ef-

fect, and [determining] whether retrospective operation will further or retard its operation.' " *Chevron*, 404 U.S. at 106-07, 30 L. Ed. 2d at 306, 92 S. Ct. at 355, quoting *Linkletter v. Walker*, 381 U.S. 618, 629, 14 L. Ed. 2d 601, 608, 85 S. Ct. 1731, 1738. In its decision in *Mueller*, the appellate court rejected the analysis contained in *Barrows* and its progeny because of the split of authority on the question of the applicability of the Administrative Review Law to actions concerning police promotions. See *Mueller*, 267 Ill. App. 3d at 731. Moreover, the court noted that its departure from the "prior settled rule" in the district was warranted in order to promote incongruous results. *Mueller*, 267 Ill. App. 3d at 732-33. A non-retroactive application of *Mueller* to the parties in this case does not frustrate these concerns. The appellate court here noted that it was applying *Mueller* prospectively to the parties "because the facts of the instant case and its timing *vis a vis Mueller* are so unique." No. 2—94—0987 (unpublished order under Supreme Court Rule 23). Therefore, the nonretroactive application was expressly limited to the facts of the case and could not have "retarded" the future operation of *Mueller*. In addition, the appellate court issued its decision as an unpublished order under Supreme Court Rule 23 (134 Ill. 2d R. 23). As a result, the appellate court's decision in this case has no precedential value and does not in any way "overrule" or modify the rule announced by the Second District in *Mueller*. That decision remains intact in the absence of a contrary ruling from this court. For these reasons, prospective application of *Mueller* in this case will not dilute the operation of the rule announced in *Mueller* in the Second District.

The final element of the *Chevron* test concerns whether substantial inequitable results would be produced if the former decision is applied retroactively. *Chevron*, 404 U.S. at 107, 30 L. Ed. 2d at 306, 92 S. Ct.

at 355. In this case, the effect of a retroactive application of *Mueller* would be that plaintiffs' lawsuit is time-barred. More important, such an application would deprive plaintiffs of any remedy whatsoever due to a superseding legal doctrine that was unforeseeable. In this respect, this case is similar to *Chevron*, in which a plaintiff's cause of action was terminated by the retroactive application of the former case. The United States Supreme Court there noted that it would be "substantial[ly] inequitable *** to hold that the [plaintiff] 'slept on his rights' at a time when he could not have known the time limitations that the law imposed upon him." *Chevron*, 404 U.S. at 108, 30 L. Ed. 2d at 306-07, 92 S. Ct. at 356. We share this view in this case and find that the balance of equities falls in plaintiffs' favor.

In view of the circumstances of this case, we reject defendants' contention that the appellate court erred in finding that plaintiffs satisfied the criteria for a prospective application of *Mueller* to their cause of action.

## CONCLUSION

Having found no merit to each of defendants' assignments of error, we hereby affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE HARRISON, specially concurring:

Illinois has but one appellate court. *People v. Granados*, 172 Ill. 2d 358, 371 (1996). Although the state is divided into five judicial districts, those districts have nothing whatever to do with the court's authority. Their sole purpose is to define the political units from which judges of the supreme and appellate courts are selected. Ill. Const. 1970, art. VI, § 2.

Because there is only one appellate court, a decision by any division of that court is binding precedent on all circuit courts throughout the state, regardless of locale.

*People v. Harris*, 123 Ill. 2d 113, 128 (1988). That being so, I fail to see how the majority can hold "that when conflicts arise amongst the districts, the circuit court is bound by the decisions of the appellate court of the district in which it sits." 176 Ill. 2d at 92. Such a rule makes sense in the federal judiciary, where there are various courts of appeal which are autonomous, but it is wholly inconsistent with the principle that the appellate court in Illinois is a single body whose decisions are binding on every circuit court in the state.

Given the unitary nature of the Illinois appellate court and the reach of its decisions, what circuit courts should be doing is following the most recent appellate court decision on point. That is so even if the decision conflicts with a prior decision of an appellate court division located within the circuit court's particular district. The geography is simply irrelevant.

Subject to this qualification, I agree with the majority's analysis and with the result it reaches.

CHIEF JUSTICE HEIPLE joins in this special concurrence.