# Illinois Official Reports

## Appellate Court

---

### *State ex rel. Stephen B. Diamond, P.C. v. SR/Ecom, Inc.*,
### 2018 IL App (1st) 172431

---

| | |
|---|---|
| Appellate Court Caption | THE STATE OF ILLINOIS *ex rel.* STEPHEN B. DIAMOND, P.C., Plaintiff-Appellant, v. SR/ECOM, INC.; SR/ECOM, LLC; SAUCONY/ECOM, INC.; SRCG/ECOM, INC.; STS/ECOM, INC.; and ROBEEZ LOGISTICS, INC., Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-17-2431 |
| Filed | December 4, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-13198; the Hon. Thomas R. Mulroy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stephen B. Diamond, of Stephen B. Diamond, P.C., Tony Kim and Matthew Burns, of Kim & Burns LLP, Matthew W. Rathsack, and David A. Genelly, of David A. Genelly, Ltd., all of Chicago, for appellant.<br><br>Mary Kay Martire and Lauren A. Ferrante, of McDermott Will & Emery, LLP, of Chicago, for appellees. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.


**OPINION**

¶ 1     A lawyer serving as both relator and counsel in a *qui tam* action under the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2014)) has himself or herself as the client. In *State of Illinois ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, a case raising the same issue by the same relator/counsel as here, the Illinois Supreme Court, as a matter of first impression, held that the relator/counsel in a successful *qui tam* case may not collect attorney fees for representing itself.

¶ 2     Relator law firm, Stephen B. Diamond, P.C., contends *My Pillow* does not bar its petition for attorney fees because (i) the holding applies only prospectively under the test in *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82 (1997), and (ii) the parties' settlement agreement expressly barred later court rulings from applying to it. We conclude Diamond fails to overcome the legal presumption that appellate court opinions apply both retroactively and prospectively. And, contrary to Diamond's reading, nothing in the settlement agreement precludes denying the fee petition.


¶ 3                              BACKGROUND

¶ 4     Stephen B. Diamond P.C., as relator, filed a complaint under the False Claims Act (740 ILCS 175/1 *et seq.* (West 2014)) alleging the defendants, several online shoe companies, failed to collect and remit taxes on Internet sales to Illinois consumers. The State declined to intervene and the trial court entered an order allowing Diamond to proceed. When defendants' attempt at settlement with Diamond proved unsuccessful, they began discussions with the State. After defendants and the State reached an agreement, they jointly moved for the trial court's approval.

¶ 5     The settlement agreement required defendants to pay $978,453.63, three times the tax on its Illinois sales from October 9, 2012, to May 31, 2014, the date defendants began collecting and remitting Illinois sales tax. (Defendants paid $694,702.08 to the State and $283,751.455 to Diamond's firm, as relator.) Pertinent to this appeal, paragraph 5 of the settlement agreement provides that Diamond "has the option" of filing a petition for attorney fees and expenses for his firm's work, as well as the work of outside counsel. And paragraph 14 states the agreement was "not revocable in the event of any changes to the [False Claims Act] or to any applicable tax statute or regulation or any subsequent rulings by a court, at any level, regarding the [False Claims Act]."

¶ 6     Over Diamond's objection, the trial court approved the settlement, finding it to be fair, adequate, and reasonable. Diamond then filed a petition for attorney fees and expenses in excess of $1 million for services performed by employees or principals of the firm. Documents submitted in support of the fee petition indicated that Diamond's outside counsel, Vanasco, Genelly & Miller, spent no time on the case, although listed as counsel on all pleadings.

¶ 7     Defendants filed a motion objecting to the fee petition arguing, in part, that Diamond was precluded as a matter of law from an award of fees for self-representation under the False

Claims Act because he was serving as both client and attorney. The trial court denied defendants' motion and awarded Diamond $974,914 for attorney fees and expenses, after deducting several travel-related expenses. Diamond moved to reconsider the portion of the fee petition the trial court denied and filed a supplemental fee petition, seeking additional fees related to its motion to enforce the settlement agreement. Defendants filed a motion to reconsider, again arguing the trial court should deny Diamond's fee petition as a matter of law because a relator is not entitled to fees under the False Claims Act for self-representation.

¶ 8        While those motions were pending, the appellate court issued a decision in *People ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2017 IL App (1st) 152668, holding, as a matter of first impression, that a relator who acts as his or her own attorney cannot seek attorney fees under the fee shifting provision of the False Claims Act. *Id.* ¶ 148. Justice David Ellis, writing for the court, found that awarding attorney fees to a self-represented relator violated public policy regardless of the work done by the self-represented relator or the benefit the work conferred on the State thereby. *Id.* ¶¶ 143-48. The court noted that the statutory fee-shifting provisions intend to "incentivize[ ] individuals to ferret out *** fraud [against the government] by removing the burden of legal fees as a deterrent." *Id.* ¶ 132. The False Claims Act rewards prevailing relators by providing an award of between 25% and 30% of the lawsuit's proceeds if a relator handles the litigation from start to finish, without the State's intervention. *Id.* So to then "reward that law firm for its efforts again, this time based on an hourly fee rate, strikes us as a double recovery." (Emphasis omitted.) *Id.*

¶ 9        Further, because a relator/counsel serves in both capacities, the arrangement lacks independence. *Id.* ¶¶ 138-39. The court also cited the potential for abusive fee generation and noted that Illinois public policy does not support allowing law firms to create a business out of filing lawsuits under statutes with fee-shifting provisions. *Id.* ¶ 142.

¶ 10       After ordering additional briefing and hearing arguments on the applicability of *My Pillow*, the trial court granted the defendants' motion for reconsideration, reversed its earlier fee award, and denied Diamond's motion for reconsideration and supplemental fee petition. The trial court agreed with defendants on *My Pillow* applying retroactively under *Aleckson v. Village of Round Lake Park*, 176 Ill. 2d 82 (1997), reasoning that a prospective-only application would hinder the public policy concerns identified in *My Pillow*. The trial court also found that the statement of public policy in *My Pillow* prohibiting a self-represented relator from recovering legal fees foiled the settlement agreement's provision blocking the effect of later court rulings regarding the Act.

¶ 11       After Diamond appealed, the Illinois Supreme Court issued its opinion in *State of Illinois ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow*, *Inc.*, 2018 IL 122487, affirming the appellate court. The supreme court's opinion highlighted some of the same public policy reasons the appellate court identified, including the free rein afforded lawyers pursuing the litigation and the need to avoid abusive fee generation practices. See *id.* ¶¶ 25-26. (citing *Hamer v. Lentz*, 132 Ill. 2d 49, 62-63 (1989)).

¶ 12       Defendants filed a motion to cite the supreme court's opinion as controlling authority. In reply, Diamond argued (i) *My Pillow* applies prospectively only and thus does not bar him from receiving attorney fees and (ii) the settlement agreement barred application of any later court rulings.

ANALYSIS

Prospective Application of *My Pillow*

Diamond contends *My Pillow* cannot be applied retroactively. This is a question of law reviewed *de novo*. *Schmidt v. Ameritech Illinois*, 329 Ill. App. 3d 1020, 1027 (2002).

In the civil context, generally, an opinion issued by a court presumably applies both retroactively and prospectively. *Aleckson*, 176 Ill. 2d at 86. This presumption can be overcome if three criteria are met: (i) the decision established a new principle of law, either by overruling past precedent on which the parties relied or by deciding an issue of first impression the resolution of which was not clearly foreshadowed; (ii) given the purpose and prior history of the new principle of law, its operation will be promoted by prospective only application; and (iii) substantial inequitable results would be produced by applying the decision retroactively. See *id.* at 87-88; *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971).

Defendants contend the trial court did not retroactively apply *My Pillow* because the parties' motions to reconsider remained pending when the supreme court issued *My Pillow*. Diamond argues that, since the trial court had already approved the settlement agreement and granted the fee petition, *My Pillow* did involve an impermissible retroactive application under *Aleckson*.

But even accepting Diamond's position does not satisfy the three prongs of the *Aleckson* test. Although *My Pillow* decided an issue of first impression, satisfying the first prong, the purposes of the new principle of law—to avoid double recovery and deter abusive fee practices—will not be promoted by prospective only application. To allow Diamond to recover attorney fees in addition to a portion of the settlement he already received would amount to double recovery, which the supreme court's *My Pillow* holding expressly seeks to avoid.

And prior history does not support an argument for prospective only application of the new principle of law. Diamond argues the trial court was following a long line of cases awarding attorney fees to self-represented relators when it initially approved his fee petition and it would be unfair to retroactively rescind the fee award. But he cites circuit court cases only, which have no precedential value. Once the appellate court issued its opinion, which the supreme court affirmed, the trial court properly applied the new principle of law to deny Diamond's petition for attorney fees.

Further, retroactive application does not result in a substantially inequitable result. Diamond received 29% (or $283,752) from the settlement and, thus, received recompense for bringing the lawsuit. Moreover, Diamond knew in litigating this case that the issue of attorney fees for law firms serving as relators in *pro se qui tam* lawsuits was unsettled—the *My Pillow* defendants had filed a motion objecting to the fee petition, maintaining, as a matter of law, Diamond was precluded from an award of fees for self-representation. And, at the time Diamond submitted his fee petition to the trial court, the attorney fees issue was unsettled and pending before the appellate court. Thus, Diamond had good reason to know the trial court might not award his firm attorney fees.

Terms of the Settlement Agreement

Diamond asserts the trial court erred in applying *My Pillow* due to the settlement agreement's express bar on applying later court rulings. Specifically, Diamond cites paragraph 14, "The Settlement Agreement is binding on the parties hereto and is *not revocable in the*

*event* of any changes to the [False Claims Act] or to any applicable tax statute or regulation, or any subsequent court rulings by a court at any level, regarding the [False Claims Act]." (Emphasis added.)

¶ 23   Diamond asserts *My Pillow* falls squarely within the definition of "any subsequent rulings by a court" regarding the False Claims Act and that paragraph 14 bars it from being applied. To the contrary, paragraph 14 does not say that at all. As the italicized language reveals, the agreement is not *revocable* should a court makes changes to the False Claims Act. Defendants did not attempt to revoke the settlement agreement due to subsequent court rulings. Indeed, defendants complied with the terms of the settlement agreement, paying the amounts owed to Diamond and the State. Nor does paragraph 5 of the settlement agreement help. Paragraph 5 simply allows the firm to submit a petition. Thus, the language of the settlement agreement did not preclude the trial court from applying the *My Pillow* holding to deny Diamond's attorney fees petition.

¶ 24   Affirmed.